JOHN TEAZ *v.* DAVID CHRYSTIE and THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK.

In a proceeding, by a laborer or material man, to enforce a lien under the act of 1851, "for the better security of mechanics and others," it appeared that the claimant, having received the note of the contractor for the amount of his claim, had endorsed and transferred the note, receiving from the endorsee the amount thereof, and that such endorsee had recovered thereon a judgment against the contractor, which remained unsatisfied and in full force. *Held,* that the claimant could not recover, without proving that he had, by payment to the endorsee or otherwise, become re-invested with the title to the debt.

*Held, further,* that the mere production of the note, at the trial, and offering to give it up to be canceled, was not sufficient.

Under such circumstances, the plaintiff must produce evidence which will furnish to the contractor an assurance that payment to the claimant, in satisfaction of the lien, would be a protection to him against the apparent title of the judgment creditor to collect the same debt by means of the judgment.

Although the promissory note of a debtor is not payment of his debt, the acceptance and transfer of such note by the creditor suspends his remedy for the debt until the title of the creditor is re-invested.

And where the endorsee has recovered against the debtor a judgment thereon, the mere production of the note itself to be canceled on the trial—without proof that the plaintiff has paid it, or obtained the control of the judgment or of the judgment debt—is not sufficient to entitle the original creditor to recover for the consideration on which the note was given.

Whether the Marine Court has jurisdiction, in a proceeding under the mechanics' lien law of 1851, where the amount claimed exceeds one hundred dollars? *Quere.* (a)

GENERAL TERM, JULY, 1855.

THE corporation of the city of New York, being the owners of land in the sixth ward of that city, whereon they were erecting a police station-house, entered into a written contract with the defendant, David Chrystie, to do the mason work required in the construction, for a stipulated sum, payable in instalments as the building should progress towards its completion. Chrystie made a parol agreement

---

(a) See *Jaques* v. *Morris,* November Special Term, 1855, *post.*

with the plaintiff, John Teaz, to do "the blue stone work and furnish the materials therefor"—the same being called for by the contract first mentioned—for which the plaintiff was to receive $490.

The performance of the verbal agreement was completed and accepted about the first of September, 1854.

On the first of July preceding, Teaz, on account of the work and materials furnished by him, took from Chrystie the promissory note of the latter, dated that day, for $220, payable at ninety days after date; and on the twenty-eighth of September, 1854, the plaintiff took from Chrystie another promissory note made by the latter, dated on the day last mentioned, for $200, payable two months after date. The balance of $70, not covered by the first note, was included in the second, together with another claim existing between the parties.

Both notes, before their maturity, were endorsed and transferred, by the plaintiff, to third persons, who discounted them and paid their amounts to him.

When they respectively became due, they were protested for non-payment, and—as appeared from the admissions of counsel on the trial—the endorsees recovered judgments upon the notes against Chrystie, whereon executions were issued, and returned unsatisfied.

The defendant, Chrystie, fulfilled his contract with the corporation.

Subsequently, and on the fifth of January, 1855, the plaintiff filed, with the clerk of the county of New York, a notice, pursuant to the sixth section of the act for the better security of mechanics and others, passed July 11, 1851, for the purpose of effecting a lien upon the premises in question, against "The Mayor, Aldermen and Commonalty" of the city, for $490, the alleged value of the work and materials furnished by him under the parol agreement with Chrystie, and conformably with the latter's contract with the corporation. When this notice of lien was filed, the corporation were indebted to Chrystie, upon their contract with him, in

a balance of about $1,400. The building being afterwards fully completed and accepted, the corporaticn, without examining the docket of liens, and without being otherwise apprised of this lien, paid the money due their contractor to assignees appointed in a voluntary assignment executed by him, as an insolvent, for the benefit of his creditors.

On the second of March, 1855, the claimant, in his own name, served up'on " The Mayor," &c., and upon Chrystie, a notice, under the fourth section of the statute, to appear in the Marine Court, on the second of April, and submit to an accounting and settlement of the amount due for the value of the work and materials furnished by the plaintiff. A bill of the particulars of the claim was duly served, as prescribed in § 5.

On the return day of the notice, all the parties appeared in the court below, joined issues, and proceeded to trial, when the facts above stated were disclosed. It was admitted that the notes were still unpaid by Chrystie; that the judgments against him were still unsatisfied of record; that the work and materials furnished by the claimant were worth $490 ; and that this sum was unpaid to him, except so far as the notes might operate as a payment.

The plaintiff produced the notes and offered to give them up to be canceled. By what means he had obtained them from the endorsees did not appear.

The defendants recovered judgment. The plaintiff appealed.

*William R. Stafford*, for the plaintiff, made and argued the following points:

I. There is no dispute as to the facts, and the justice could only have rendered his decision from a doubt as to the powers of his court to enforce a judgment for the plaintiff, and so leave him to this court for his remedy.

II. The plaintiff's case presented all the requisites for a recovery upon the lien.   1st. The proper contractor.   2d.

The proper owners.    3d. The contract between them.    4th. The plaintiff's contract direct with the contractor for the owner.    5th. Performance by plaintiff in conformity with those contracts.    6th. Filing of his lien within six months after completion of the work.    (The work was done 1st September, 1854; the lien was filed on 5th January, 1855.) 7th. A payment due from the owners to the contractor *on that day*, which payment was in law stopped by the lien.    8th. Performance in full by the contractor; acceptance by the owners; and *subsequent* payment by them to the contractor's assignees.    In each of these particulars the plaintiff's case was in exact conformity to the decisions of this court.

III. The lien itself is a mere security for a debt and not the debt itself, and it is no defence to say we took notes for the debt, and judgments were obtained, unless the notes or the judgments have been paid.    (*Miller* v. *Moore*, 1 E. D. Smith's Rep. p. 740.)    1. It would have been no defence to Chrystie, if we had sued him directly for this work, to say we had this lien.    In *Gridley* v. *Rowland*, 1 E. D. Smith's Rep. 670, Judge INGRAHAM expressly says : " A lien is a security, and the party can enforce his debt in such and so many ways as he may be enabled, and it is no defence to say he has these securities, unless through them he has been paid."    2. The notes taken by plaintiff merely extended the time of credit, and restrained us from enforcing our lien until they were protested.    (*Miller* v. *Moore*, 1 E. D. Smith's Rep. 740.)    Here the notes were given in July and August, and protested in October and November, 1854.    Our lien was *not filed till 5th January*, 1855; although it would have been perfectly good if filed before the notes were protested, if not enforced till after that time.    3. It is immaterial to whom those notes were passed, or how many judgments were recovered on them.    We produced them in court ready to be cancelled to the amount of our lien, on payment, and the courts in which those judgments were recovered have full power to satisfy them of record when proper.    Besides, this was an action *in rem*, and the owners, (The Mayor, &c.,)

could not raise this objection; nor could Chrystie, except to prevent a judgment for deficiency on a sale under the lien.

IV. The subsequent payment by the owners, The Mayor, &c., clearly renders them liable.    1. The filing of our lien was constructive notice, which bound them.    2. The payment to the assignees has no greater force than if made to Chrystie direct.    A. The payment was due Chrystie when our lien was filed.    B. Assignees for the benefit of creditors (not being *bona fide* purchasers) take subject to all our equities.    (Burrill on Assignments, 72, 76; 2 Barbour's S. C. Rep. 475; 4 Sandford's Chancery R. 498; 2 Paige, 567; 6 Johns. Chan. 437.)    They stand in the shoes of Chrystie. C. Even if they were *bona fide* purchasers, the filing of our lien gave us *priority* and them full notice.

V. The judgment should, therefore, be reversed, with costs, and as there is no dispute as to the facts, and a new trial unnecessary, judgment should be ordered by this court, adjudging the sum of $490, and interest from 5th of January, 1855, due to plaintiff; that the plaintiff's lien is valid as against the defendants, The Mayor, &c., and that the right, title and interest of the said The Mayor, &c., on said 5th of January, 1855, be sold; that out of the proceeds the plaintiffs be paid said sum, interest and costs.    We should also recover our costs in the court below.    (*Jacks* v. *Darrin*, 1 Abbott's Practice Reports, p. 232.)

*Abraham R. Lawrence, Jr.*, and *Robert J. Dillon*, (counsel to the corporation,) for the owners, The Mayor, &c., made and argued the following points:

I. The judgment of the Marine Court was right, and should be affirmed.    The plaintiff has been paid in full for the services performed and the materials furnished by him under his sub-contract with Chrystie.    The two notes paid by Chrystie to the plaintiff, though operating only as a suspension of the plaintiff's right of action *while in his hands*, having been passed away by him to third parties, and full

value having been received by him from third parties, must be regarded as a discharge of the debt for which they were given.   Upon receiving the value of the notes, the debt of Chrystie to plaintiff ceased.   It is true that the notes have not been paid to those persons to whom they were passed by the plaintiff; but judgments have been recovered upon them by those persons; and those judgments do not damnify the plaintiff; nor is he in any manner liable upon them.   They were recovered against Chrystie, as appears by the stipulation, and not against the plaintiff.   It is difficult to conceive how the plaintiff has been injured by the state of facts shown by the return.   The case of *Miller* v. *Moore*, (1 E. D. Smith's Rep. 739,) cited by the plaintiff's counsel, has no bearing upon this case.   In that case the note had been retained by the plaintiffs, and no value had ever been received by them for it.   The plaintiffs held the note at its maturity, and nothing having been paid upon it, the temporary suspension of their right to invoke the aid of the law ceased.   There was no discharge of the debt between the contractor and the plaintiff.   But in this case the plaintiff has received value, and by his transfer of the notes, third persons have obtained judgments against the contractor, which are still outstanding and unsatisfied.   The recovery of a judgment by the plaintiff, in this proceeding, would not avail Chrystie in procuring the discharge of those judgments.   The plaintiff's production of the notes, unsustained by any proof of the satisfaction of the judgments obtained upon them, or of any assignment of those judgments to him, does not aid the plaintiff.

II. There being no debt in existence from Chrystie to the plaintiff, the payment by the defendants, The Mayor, Aldermen and Commonalty of the city of New York, to Chrystie's assignees, is valid, and discharges the defendants from all liability in this proceeding.

III. The amount claimed exceeding one hundred dollars, the Marine Court had no jurisdiction of the proceeding.  (Laws of 1851, p. 954, § 4.)   The act of 1853, increasing the juris-

diction of the Marine Court to five hundred dollars, only applied to cases in which the jurisdiction of the Marine Court, at the time of the passage of the act, extended to two hundred and fifty dollars. (Laws of 1853, p. 1,165, § 2.) Now, the Marine Court never had jurisdiction for a greater sum than one hundred dollars in cases of this kind, under the act of 1851. (Laws of 1851, p. 954, § 4.)

IV. But conceding that the Marine Court has jurisdiction in these cases to the amount of five hundred dollars, as the sum claimed in this proceeding, with interest to the time of trial, exceeded five hundred dollars, the court clearly had no jurisdiction over it. That defect is fatal, and cannot be cured on appeal.

*William McDermot,* for the contractor, made and argued the following points:

I. If a party entitled to file a lien, at any time, even for a moment, loses the right to file his lien, he cannot regain the right thus lost. The plaintiff lost his right to file a lien. 1. By being paid the amount of his work and labor by the parties who received the notes. The amount of work, &c., was included in the notes. And the plaintiff having received the amount thereof, he cannot ask to be twice paid for the same work. If it be urged that he did not receive the amount from the owner or the contractor, but that he is liable to the endorsee of the notes, it may be answered that he has not yet been held liable; that the endorsee has chosen his remedy by suit against Chrystie on the notes; and that if the plaintiff can recover, the endorsee of the notes can also recover as assignee of the claim; because, 2. The transfer of the notes *also transferred and assigned the claim for work embraced in them.* And the plaintiff, at the time he filed his lien, having ceased to be the owner of the claim for work, he could not file a lien. The lien, as the appellant's counsel truly says, is but a security for a debt; and if there be no debt there can be no security. Will the appellant's

counsel contend that his client has now any claim against Chrystie, he having passed away the notes, and a judgment having been obtained on them against Chrystie by the endorsee?

II. The counsel, on the trial, offered to cancel the notes, but the notes were merged in the judgment, so that his offer was useless. The cases cited by the appellant's counsel are not applicable. In those cases the parties had not passed away the notes received by them, but merely held them as security. The plaintiff could not sue Chrystie for the work now. A party cannot be sued twice for the same thing. If the appellant can recover, then he will recover pay twice for the same work, once from Chrystie, through the judgment in favor of the endorsee, and again from the corporation. The court below was right in giving judgment for the defendants.

*Mr. Stafford*, for the claimant, in reply.

I. The plaintiff was liable as *endorser* of the notes which were taken up by him as such endorser, and produced and offered *pro tanto* to be canceled. This was the best evidence as to his being the real *bona fide* owner of the claim under the lien. The *lien* was not merged in the judgments on the notes, and the notes being unpaid at the time of filing the lien notice, we had a right to file it as due to us for the debt.

II. The discounting of the notes by third parties was no *payment* of Chrystie's debt. It was a loan to us, which we repaid on taking them up. He was in no wise discharged from that debt. The right of action by us for the debt was suspended merely. Nor did the fact that the subsequent endorsee sued Chrystie as maker, discharge our liability as endorser; and we were bound to take them up without waiting to be sued. The argument, that if we recovered judgment in this action, we would receive pay *twice* for the same work, is not well founded. A recovery of judgment never was, in itself, a payment or discharge of the debt.

III. The plaintiff, in taking up those notes as endorser, was not bound in any way to have the judgments against Chrystie canceled or assigned before recovering in this action. He was subrogated (as would probably have been the defendants, the owners, upon payment of our lien) to the judgment creditor of Chrystie. If the decision of this court at General Term, in *Gridley* v. *Rowland*, (1 E. D. Smith's Rep. 670,) is correct, we had a right to sue Chrystie on the notes at common law, and to enforce the lien also. If Chrystie should pay our lien, (and this was not sought in this action, as against him,) he has his remedy to obtain satisfaction of record of those judgments in the courts where obtained.

IV. The defendants have not shown *when* those judgments were obtained. The claim existed in the plaintiff's favor when the lien was filed. The notice required by the act is of the amount "*claimed*," (§ 6 of act,) not "due;" and although the presumption is not rebutted, that the plaintiff took up the notes within a reasonable time, *i. e.*, before 5th January, 1855, (they were due in October and November,) still, even if he had not, he had a right to file his lien for the claim. He never lost his right to file a lien. He could do so at any moment, up to six months after performance. He is only restrained from enforcing that lien until after he has performed and the debt is due him. (Mechanics' Lien Law of 1851, §§ 4, 6.)

V. The idea, therefore, that the discounting by third parties was a *payment* to us of Chrystie's debt, and discharged him, or that *two recoveries* against Chrystie would be had if judgment were rendered in our favor, or that the production of the notes by us was not evidence of a re-assignment to us, is, therefore, fallacious, although it seems to us that even if the plaintiff had not taken the notes up, the holders would have had a perfect right, in the *plaintiff's name*, to *file* a *lien* and *enforce it* for their own benefit in this action, he being a trustee for their benefit, and, as such, authorized to sue under the Code.

VI. The objection to jurisdiction (contained in the argument for The Mayor, &c.) cannot be sustained. 1st. It was not taken in the court below, and cannot be on this appeal. 2d. If it were correct, then the justice should have dismissed the proceeding; and his present judgment in *favor of the defendants must be reversed.* 3d. The lien law gave jurisdiction to the amount of $100. The laws of 1852 (p. 647, § 9) increased it to $250 *in all cases;* and the laws of 1853 (p. 1,165, § 2) further increased it to $500. The suit might be for any amount, but the party could only recover to the amount of $500. We only claimed $490, and the interest, which, at the time this action was tried, was exactly $10; still, we submit, it was immaterial if our claim were $100 more, so long as we sought and could only recover the $500 allowed by statute. In practice, the excess over $500 is frequently remitted, in order to obtain a speedy judgment.

VII. Upon no sound principle can this judgment be sustained. The plaintiff is not paid by the worthless notes of Chrystie, or the unsatisfied judgments obtained on them. The whole scope of the law would be evaded by upholding this defence. He is deluded into taking notes, and upon the strength of his own endorsement procures, for a time, the money on them. The holders endeavor, without success, to collect from the maker, and sue (for aught that appears) without the knowledge of the plaintiff, who takes them up when called on. He is thus in the same position as if he had never received a dollar, and revested with all his rights.

By THE COURT. WOODRUFF, J.—In this case the plaintiff furnished work and materials in pursuance of an agreement with the contractor, and in conformity with a contract between the owner and contractor for the erection of a building. During the progress of the work and after its completion, the plaintiff received the contractor's promissory notes for the full amount of the work, which notes he endorsed over to third parties, who paid him the amount thereof, and who brought suits thereon and recovered judgments against the

Teaz v. Chrystie.

contractor, which remain unsatisfied, executions having been returned.

After the protest of the notes, the plaintiff filed a notice to create a lien, which lien he now seeks to foreclose in his own name, and he produces the notes in court to be canceled.

By what means he became possessed of the notes, it does not appear. Whether he has paid the judgment recovered against the contractor, does not appear. No proofs in the case show that he is the owner of the claim, except the mere fact that he produces the notes.

The result is, that for aught that appeared on the trial, if this lien should be enforced and the money claimed be paid to the plaintiff, the defendant, Chrystie, will still remain bound by the judgments rendered against him, and the third persons not parties to this suit, who are by the record owners of the claim and entitled to the very moneys sought to be recovered, may yet enforce their judgments against the contractor. Under these circumstances, I think the court below were right in dismissing the suit.

It is questionable whether a payee can recover of the maker of a note, where it appears in evidence that he has endorsed the note to a third party, who has recovered judgment against the maker thereon, without showing that he has himself *paid* the note to such third person in satisfaction of his endorsement, or at least has received a re-transfer thereof, with intent to vest in him the demand. (See *Mendy* v. *Cameron*, 1 Lord Raymond, 742.) The endorsement of a note is regarded as equivalent to drawing a bill on the maker to the order of such third person (the endorsee); and see such a case in parliament, *Parminter* v. *Symons*, 4 Bro. P. C. 604; *Louviere* v. *Laubray*, 10 Med. 36.)

The present is like an action for the consideration of a note; and laying out of view, for the present, the peculiar form of the proceeding, let us suppose, for the purpose of testing the plaintiff's title to recover, that he had brought his action in the common form against the contractor for the work and materials.

The case would stand thus: the plaintiff furnished to the contractor work and materials, and received therefor such contractor's negotiable note.   By this it is true the debt is not paid; the only effect is to suspend the right of action until the note comes to maturity.   But the plaintiff transfers the note to a third person ; by that transfer he loses his right of action; the title is now vested in the third person, who *alone*, while all things remain in that condition, is entitled to the money due.   Upon that title such third person recovers a judgment against the contractor; by that judgment the right of action, before vested in such third person, is merged, and *that* right of action cannot be transferred to the plaintiff by delivery of the note.   It is true, that if the plaintiff pays the debt to such third person, and takes up the note in discharge of his own liability as endorser, he has his resort to the maker for the original consideration or for money paid to his use, and he may perhaps proceed on the note itself, but he must, before he can avoid the legal effect of his own transfer of the right of action, and the recovery of a judgment by a third person thereon, show that he has become re-invested with a title to the unpaid debt, in such a manner that if the maker of the note pay him the money, it will operate to discharge him from a liability to pay the same amount again upon such judgment.   The possession and production of the note does not prove this, for the possession of the note ceased to be material to the third person for the purpose of enforcing his claim against the maker the moment he recovered judgment thereon; and, therefore, no presumption, that the plaintiff had paid the amount to such third person in discharge of the maker's liability, arises from the fact that the plaintiff afterwards obtained possession of the notes.

The maker of a negotiable instrument is entitled to protection and will be protected against a liability to pay the debt to more than one person ; and although it is true that it is ordinarily sufficient, in an action on a note that is endorsed in blank, for the holder to produce the note on the

trial, and that is deemed *prima facie* evidence of title, notwithstanding there appears thereon endorsements to other parties, indicating that it had been transferred, and such holder is permitted to strike out such subsequent endorsements and rely on his possession as evidence of title, yet this is upon the ground that, as the previous endorsements are adapted to give him title, and as the subsequent endorsees cannot recover on the note without producing it, the inference is legitimate that such subsequent endorsees, when they parted with the possession, authorized him to strike out such subsequent endorsements and parted with the title. As they could not recover without the possession, so their restoring to him the possession is presumptive evidence that they restore to him the title.

But if either of such subsequent endorsees has recovered judgment against the maker thereon, the reason ceases. Mere possession of the note no longer indicates that the party producing it is invested with a title to the judgment or the judgment debt, or that payment of the note to him will satisfy such judgment. Something more is necessary, and until the plaintiff in such case can give, and does give proof which furnishes to the maker a full assurance that if. he pay the note to the plaintiff he cannot be required also to pay such judgment, the plaintiff can neither recover for the consideration of the note nor upon any other ground.

Again, it is settled that when the plaintiff sues for goods sold or money lent, and it appears, by way of defence, that he has taken the defendant's negotiable note therefor, he must produce such note on the trial to be canceled or returned to the defendant, or he cannot recover for the consideration thereof; and if he do so produce and cancel the note, he may recover. This is precisely what was attempted in the present case. Upon what principle does this rule proceed? Obviously upon the principle above suggested— that, although the giving one's own note is not payment of a debt, yet it is a suspension of the right to recover for the debt so long as such negotiable note is outstanding, and

until the plaintiff, who claims remission to his original claim, also restores the defendant to a condition of immunity from prosecution on such note by producing it to be canceled or returned to the defendant. But such production, after it appears that it has been before transferred to a third person, and judgment recovered thereon, furnishes no such immunity. And that this is so, appears by answering another inquiry. Suppose, on such trial, the note is restored to the defendant, and afterwards an action is brought upon the outstanding judgment so recovered by the third person, would the production of the original note, in the hands of the defendant, be sufficient to defeat such action? Would such production be sufficient evidence that the judgment is satisfied? Plainly not, and for the reason that the note, being merged in the higher security, is, as between those parties, mere waste paper, of no value to the judgment creditor, and, therefore, its loss, or his suffering it to go out of his possession, does not, of itself alone, show that his judgment is paid.

These views are not only consistent with the decision of this court in *Gridley* v. *Rowland,* 1 E. D. Smith's Rep. 670, and *Miller* v. *Moore,* Id. 740, but may be regarded as an affirmance of those cases. The defect in the plaintiff's case is, that he does not show title in himself, exclusive of the title which is apparently vested in the judgment creditors to have from the defendant the very money to recover which the plaintiff now claims, and that, too, when such judgment creditors have title, as transferees of the plaintiff himself.

The defendants' counsel further insisted, that their objection to the jurisdiction of the Marine Court was well taken; but it is not necessary to consider that question, since the judgment of nonsuit or dismissal must, we think, be sustained upon the other ground.

Judgment affirmed.